IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| DENNIS D.[1],<br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | Case No. 3:22-cv-202<br>Rose, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Dennis D. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 12).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on August 14, 2019, alleging disability beginning October 13, 2015, due to chronic obstructive pulmonary disease (COPD), congestive heart failure (CHF), gastritis, chronic pain, irritable bowel syndrome (IBS), transient ischemic attack (TIA), cardiovascular disease, and blood in urine. (Tr. 202-03, 253).[2] The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory M. Beatty on May 27, 2021. (Tr. 40–80). The ALJ denied plaintiff's application in a written decision on July 26, 2021. (Tr. 14-

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Plaintiff previously filed for DIB alleging disability beginning on October 13, 2015. ALJ Gregory G. Kenyon issued an unfavorable decision on August 31, 2018. (Tr. 101-21).

39). This decision became the final decision of the Commissioner when the Appeals Council denied review on June 17, 2022. (Tr. 2-8).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2021.

2. [Plaintiff] has not engaged in substantial gainful activity since October 13, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: chronic obstructive pulmonary disease (COPD), chronic ischemic heart disease, essential hypertension, peripheral vascular disease, diabetes mellitus, degenerative disc disease, and obesity (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to no climbing of ladders, ropes, or scaffolds with occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. He is limited to occasional pushing, pulling, and use of foot controls with the bilateral lower extremities. The [plaintiff] is further limited with no work at unprotected heights or moving mechanical parts, and he should avoid concentrated exposure to extreme cold, extreme heat, and dusts, odors, fumes, and other pulmonary irritants.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]

---

[3] Plaintiff's past relevant work was as a manufactured building supervisor, a medium, skilled position; and a paint line laborer, a medium, semi-skilled position. (Tr. 33, 72-75).

7. [Plaintiff] was born … [in] 1969 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[4]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 13, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-35).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S.

---

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as collator operator (44,200 jobs), laborer (83,850 jobs), and routing clerk (104,800 jobs). (Tr. 34, 76).

197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors[5]

In his statement of errors, plaintiff contends that the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for plaintiff to overcome. (Doc. 9 at PAGEID 1458-62). Plaintiff further contends that the ALJ erred by relying, in part, on state agency consultants Leslie Green, M.D., and Mehr Siddiqui, M.D., because they adopted the prior ALJ's opinion pursuant to AR 98-4(6), and by failing to reconcile the inconsistencies between the opinions of the consultants and the opinion of plaintiff's treating source, James W. Thomson, D.O. (*Id.* at PAGEID 1460-62).

---

[5] The parties generally agree with the ALJ's summary of plaintiff's medical history. (*See* Doc. 9 at PAGEID 1455; Doc. 11 at PAGEID 1467). Specific medical records will be discussed as relevant to the analysis.

The Commissioner counters that the ALJ appropriately accounted for a prior decision by giving the evidence in the current claim the "fresh look" required. The ALJ also properly considered medical opinions and prior administrative medical findings, the Commissioner argues, and fully explained the persuasiveness of each of these opinions. (Doc. 11 at PAGEID 1469-76).

### 1. The ALJ Satisfied the Requirements of *Earley*

#### a. *ALJ Beatty's Decision Contains a Typographical Error*

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)). *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). The Sixth Circuit held in *Drummond* that "absent changed circumstances" the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. Following the decision in *Drummond*, the Commissioner issued Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998). AR 98-4(6) explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id*. at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications." *Earley*, 893 F.3d at 931. The Sixth Circuit explained that when

a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Earley*, 893 F.3d at 933. But the Court of Appeals also explained that "an individual may file a second application - for a new period of time - for all manner of reasons," and res judicata would not apply to the second application. *Id*. When a claimant seeks disability benefits for a distinct time period, he can "obtain independent review" of the application so long as he "presents evidence of a change in condition or satisfies a new regulatory threshold." *Id*. at 932. Principles of consistency and finality "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability," while bearing in mind the record and findings in the prior proceedings. *Id*. at 931.

In this case, ALJ Beatty stated:

[T]he doctrine of *res judicata* applies to preclude consideration of the issue of disability before August 31, 2018. Thus, the period under consideration begins on September 1, 2018, the day after Administrative Law Judge Kenyon issued the unfavorable decision.

Regarding the residual functional capacity assessment in Judge Kenyon's previous decision, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act, unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity[.] (Acquiescence Ruling 98-4(6); *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). In this case, the claimant has produced new and material evidence documenting a significant change in the claimant's condition, particularly with respect to his improvement in mental functioning. *Thus, Judge Kenyon's previous residual functional capacity determination is binding*.

(Tr. 18) (emphasis added).

Plaintiff argues ALJ Beatty erred when he found ALJ Kenyon's RFC "binding" and used that RFC as a starting point for reviewing the new evidence. In context, it appears ALJ Beatty

7

inadvertently omitted the word "not," intending to say "Thus, Judge Kenyon's previous residual functional capacity determination is [not] binding." A full reading of that paragraph makes clear that ALJ Beatty found he was not constrained by a previous ALJ's decision where "new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity." (Tr. 18). ALJ Beatty demonstrated he was not bound by ALJ Kenyon's RFC when he stated in the very next sentence, "In this case, the claimant has produced new and material evidence documenting a significant change in the claimant's condition, particularly with respect to his improvement in mental functioning." (*Id.*). Viewed in this context, the last sentence makes no sense without the word "not" inserted before the word "binding."

This conclusion is further bolstered by the ALJ's extensive discussion of the new evidence, including the psychological evaluation of consultative examiner James Rosenthal, Psy.D., performed on October 15, 2019 (Tr. 21-23) as well as the cardiology, pulmonology, and other medical records from October 2018, November 2018, February 2019, July 2019, September 2019, October 2019, November 2019, December 2019, January 2020, February 2020, April 2020, July 2020, November 2020, December 2020, May 2021, and July 2021. (Tr. 27-30). In addition, as discussed below, ALJ Beatty crafted a different RFC than ALJ Kenyon did in the prior decision. (Compare Tr. 24 and Tr. 111). Had ALJ Beatty believed himself bound by ALJ Kenyon's August 31, 2018 decision he would not have provided a different RFC.

### b. *ALJ Beatty Provided the Fresh Review that Earley Requires*

Plaintiff contends that instead of giving the evidence a "fresh look" as *Ealey* requires, ALJ Beatty "fram[ed] his review of the evidence as a question of whether it supported a departure from ALJ Kenyon's RFC instead of as a question of what RFC the new evidence

independently supported." (Doc. 9 at PAGEID 1458). Plaintiff contends that reliance on AR 98-4(6), interpreting *Drummond* before *Earley*, creates "an unwarranted additional procedural burden for plaintiff to overcome" by reviewing the newly submitted evidence "against the backdrop of ALJ Kenyon's prior findings." (*Id.*). While that contention may have merit had the ALJ relied on AR 98-4(6) to avoid providing a fresh review of the evidence, that is not the case here.

Post-*Earley*, social security claimants have alleged error where ALJs cite *Drummond* in their decisions without similarly discussing *Earley*. As courts addressing this issue have explained, "while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question here is whether the ALJ gave a fresh review to the evidence." *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-cv-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-cv-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted by* 2019 WL 1125759 (S.D. Ohio Mar. 12, 2019) (*Earley* is satisfied if ALJ gave new evidence a "fresh look" despite purporting to follow *Drummond*). *Cf. Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio March 8, 2023) (use of prior RFC determination "as a mandatory starting place for his own RFC determination" violates *Earley*) and *Ferrell v. Berryhill*, No. 1:16-cv-00050, 2019 WL 2077501, at *4 (E.D. Tenn. May 10, 2019).

"When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F. 3d at 933. As the Sixth Circuit elaborated:

> That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.
>
> At the same time, an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application.

9

> But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id.* at 933-934. In rejecting the suggestion that "the administrative law judge should completely ignore earlier findings and applications," the Court of Appeals determined that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

In this case, ALJ Beatty fully examined all of the medical evidence - including the medical records completed after ALJ Kenyon's prior decision - and fashioned a new and different RFC. While both ALJs found plaintiff capable of light work with additional limitations, ALJ Kenyon's August 31, 2018 RFC limited plaintiff to "performing unskilled, simple, repetitive tasks" while ALJ Beatty's July 26, 2021 RFC contained no such limitation. (Tr. 24, 111).

In determining plaintiff's RFC, ALJ Beatty thoroughly examined medical records from 2015 through July 2018 (Tr. 25-27) (the time period involved in ALJ Kenyon's decision) as well as new records from October 2018 through July 2021 (Tr. 27-30). In addition, ALJ Beatty relied heavily on Dr. Rosenthal's October 15, 2019 psychological examination in deciding not to include any mental limitations in plaintiff's July 26, 2021 RFC. (Tr. 21-23).

Even though he failed to mention *Earley*, ALJ Beatty gave the evidence the fresh review to which plaintiff was entitled. Specifically, in assessing plaintiff's physical RFC for a reduced range of light work, ALJ Beatty repeatedly noted symptom control with conservative treatment, generally normal objective and examination findings, and no significant worsening in respiratory function. For example, the ALJ noted that on July 30, 2019, plaintiff's examination revealed

"[n]o significant cardiovascular or pulmonary abnormalities," his "[b]reathing was nonlabored, . . . the lungs were clear to auscultation bilaterally without wheezes, rhonchi, or rales" (Tr. 27, citing Tr. 330), and he had a "normal EKG with normal sinus rhythm" (Tr. 27, citing Tr. 1103-04).  September 2019 cardiac testing "showed no definite areas of myocardial ischemia or scar with a normal left ventricular wall motion and an ejection fraction of 63%."  (Tr. 27, citing Tr. 1023).

Plaintiff's October 2019 pulmonology notes indicate "that he had not been seen for follow-up since 2017"; he "reported an increase in dyspnea on exertion" with increased coughing "over the past seven to eight months"; but he "did not notice much wheezing, and he denied having recent or recurrent respiratory infections."  (Tr. 27, citing Tr. 873-74).  His examination revealed "diminished bases, but the lungs were clear to auscultation with no wheezes, rhonchi, or crackles," and "he seemed to be doing well."  (Tr. 28, citing Tr. 875-76).  Plaintiff's October 2019 chest x-ray "showed improved aeration of the lungs," and his "pulmonary function test demonstrated only moderate obstructive pulmonary disease with a moderate response following inhaled bronchodilators."  (Tr. 28, citing Tr. 1082 and Tr. 1100).

Similarly, ALJ Beatty dedicated nearly an entire page of his opinion to the October 16, 2019 opinion of internal medicine consultative examiner Phillip Swedberg, M.D.[6]  (Tr. 28, citing extensively to Exhibit B5F, Tr. 851-64).  His review led him to conclude that plaintiff's "relatively good functioning does not support symptoms as intense, persistent, or limiting as alleged."  (Tr. 28).

---

[6] Plaintiff did not allege error related to Dr. Swedberg's opinion, which the ALJ "interpreted as light work, which is consistent with the normal strength and gait demonstrated at his evaluation."  (Tr. 32).

ALJ Beatty also conducted a thorough examination of plaintiff's November 2019 pulmonology notes, x-rays, and cardiology notes (Tr. 28-29, citing Tr. 884-87 and Tr. 1082-96). Those notes indicate no abnormalities, chest wall deformities or tenderness. (Tr. 887). Plaintiff suffered "no wheezes, rhonchi, or crackles, and respiratory effort was unlabored." (Tr. 28, citing Tr. 887). Although plaintiff reported rib pain on his right side, he "denied shortness of breath or chest pain." (Tr. 29, citing Tr. 1090). X-rays demonstrated "no acute findings," and his "cardiovascular examination showed regular heartbeat with an S4 gallop and distant heart sounds with no particular rub." (*Id.*). Plaintiff's lungs were clear with nonlabored breathing. (*Id.*).

ALJ Beatty's review of plaintiff's urology and cardiology notes from December 2019 and February 2020 accurately indicate that plaintiff denied gross hematuria, denied worsening shortness of breath, and denied increased lower extremity swelling. (Tr. 29, citing Tr. 1022, 1082). Plaintiff's February 14, 2020 heart and vascular progress notes indicate that his "heart is regular in rate and rhythm, normal S1 and S2, no murmurs, no gallops" and lungs are "[c]lear to auscultation bilaterally, no crackles or wheezes" with "[g]ood air excursion." (Tr. 1022). Plaintiff's late 2019 imaging showed "[i]mproved aeration of the lungs compared to the previous exam." (Tr. 1082).

In April 2020, plaintiff presented to the emergency room after he fell five feet from his friend's deck. (Tr. 1380). ALJ Beatty reviewed those medical records and noted that plaintiff "denied neck or back pain," "had no weakness or numbness in his arms or legs," and "was able to walk and had no hip or lower leg injury." (Tr. 29, citing Tr. 1380). Plaintiff reported that "pain in his left lower chest and abdomen is without radiation," and "he is not feeling short of breath." (Tr. 1380). An abdominal CT revealed an "[a]cute nondisplaced fracture of what is assumed to be the anterior margin of left rib 10." (Tr. 1381). ALJ Beatty's review of plaintiff's

medical records led him to conclude that plaintiff's "adequate functioning on examination does not support symptoms or limitations as severe as alleged." (Tr. 29).

Plaintiff was hospitalized on November 24, 2020 due to COVID-19 complications. (Tr. 29, Tr. 1267-71). In December 2020, plaintiff complained of "tiredness and shortness of breath," but he denied dizziness, lightheadedness, palpitations, significant leg swelling, and significant orthopnea. (Tr. 29, Tr. 1342). As ALJ Beatty noted, plaintiff's "May 2021 echocardiogram showed only mild concentric hypertrophy with normal systolic function and a left ventricle ejection fraction estimated to between the range of 55-60% but actually calculated at 68.7%." (Tr. 30, citing Tr. 1415). His heart wall motion, left ventricle diastolic function, and right ventricle systolic function were all normal with no pericardial effusion. (Tr. 29, Tr. 1415-16).

ALJ Beatty concluded:

> During the period under review, his symptoms were usually controlled with conservative treatment (Exhibits B1F-B13F). He did not require treatment from a specialist for his diabetes or pain complaints (Exhibits B1F-B13F). He also did not receive physical therapy or injections for his pain complaints during the period under review (Exhibits B1F-B13F). Few records suggest any persistent ulceration in the legs, and he often had little to no swelling in the lower extremities (Exhibits B1F-B13F). Examinations and objective studies consistently reflect relatively normal cardiac functioning (Exhibits B1F-B13F). Pulmonary function tests do not reflect significant worsening in respiratory function that would preclude light work, and they reflect a good response to bronchodilators (Exhibits B1F-B13F). Thus, the record does not support symptoms as intense, persistent, or limiting as alleged. As such, the reduced range of light work in the above residual functional capacity fully accommodates the claimant's symptoms and limitations while giving him the full benefit of the doubt.

(Tr. 30).

The ALJ's thorough discussion of the new evidence satisfies *Ealey's* "fresh review" requirement. The record evidence substantially supports ALJ Beatty's decision that plaintiff had the physical RFC for a range of light work. Plaintiff has neither argued for nor cited any evidence supporting greater physical restrictions than those found by ALJ Beatty.

13

In addition, in finding plaintiff no longer had a severe mental impairment, the ALJ also gave a fresh look to the new evidence. ALJ Beatty aptly noted that plaintiff's application for benefits failed to allege he suffered from any mental impairments. (Tr. 21, citing Tr. 253). The ALJ further noted that while plaintiff's treatment notes occasionally mentioned mental impairments, few records reflect symptomology or abnormalities on exam. (Tr. 21, citing Exs. B1F to B13F). Plaintiff has not taken issue with these findings.

In addition, ALJ Beatty noted that plaintiff's chief complaints to Dr. Rosenthal in late 2019 contained no psychological concerns. (Tr. 21, citing Tr. 847). Plaintiff dressed neatly; was well groomed; and had normal speech with no evidence of thought disturbance or confusion. (*Id.*). Plaintiff reported that he shared household duties, drove three or four times per week, attended appointments as scheduled, took his medicine daily, enjoyed watching football games and car shows, and engaged in regular social contact with friends and family members. (*Id.*, citing Tr. 850). Plaintiff displayed no unusual behaviors or signs of psychosis. (*Id.*, citing Tr. 849). He could recall information without difficulty, follow directions, understand questions, and complete tasks indicative of an average range of intelligence. (Tr. 21-22, citing Tr. 851). He reported no pattern of social conflict in either work or social settings. (Tr. 22, citing Tr. 851). He engaged easily and maintained appropriate eye contact. (*Id.*). Plaintiff's insight and judgment were "good." (*Id.*, citing Tr. 850). Although plaintiff expressed feeling "sad, anxious, tense, and irritable several days per week," he denied any psychiatric hospitalizations, "suicidal ideation, panic attacks, trauma symptoms, obsessions, compulsions, or symptoms of psychosis." (Tr. 21, citing Tr. 848). Dr. Rosenthal noted "only mild depressive symptoms." (Tr. 22, citing Tr. 850).

Based on these observations from the 2019 examination, ALJ Beatty found in 2021 "that [plaintiff] has no limitation in understanding, remembering, or applying information; no limitation in interacting with others; *no limitation in concentrating, persisting, or maintaining pace*; and no limitation in adapting or managing oneself." (Tr. 21 (emphasis added)). In contrast, ALJ Kenyon concluded, in 2018, that plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; no limitation in adapting or managing oneself; but a *moderate limitation in concentrating, persisting, or maintaining pace*. (Tr. 108-109 (emphasis added)). Because ALJ Beatty reached a different conclusion than ALJ Kenyon's prior decision, and because ALJ Beatty based his conclusion on medical and psychological information and records obtained after ALJ Kenyon's 2018 decision, it is apparent that ALJ Beatty provided the fresh look to which plaintiff was entitled. Accordingly, the ALJ applied the correct legal standard, and plaintiff's assignment of error should be overruled.

### 2. The ALJ Properly Considered the Opinions of Drs. Green, Siddiqui, and Thomson

Although not listed as a separate assignment of error, plaintiff also contends that the ALJ erred in evaluating the opinions of state agency physicians Leslie Green, M.D., and Mehr Siddiqui, M.D., because those physicians adopted ALJ Kenyon's 2018 findings pursuant to AR 98-4(6) and because the ALJ failed to reconcile the opinion of plaintiff's treating source, James W. Thomson, D.O., with those of Drs. Green and Siddiqui. (Doc. 9 at PAGEID 1460-62). The Court disagrees.

First, Drs. Green and Siddiqui examined medical records for the period after ALJ Kenyon's August 2018 decision. Specifically, Dr. Green discussed plaintiff's medical records from October 16, 2019, July 30, 2019, November 26, 2018, and October 23, 2018, in addition to

older medical records. (Tr. 83-84). On reconsideration, Dr. Siddiqui reviewed medical evidence from September 6, 2019 through March 19, 2020. (Tr. 92-93). Both Drs. Green and Siddiqui also considered the October 16, 2019 opinion of internal medicine consultative examiner Phillip Swedberg, M.D. (Tr. 86, 96).

Second, since Drs. Green and Siddiqui adopted the prior findings pursuant to AR 98-4(6), ALJ Beatty concluded that they did not find a change in plaintiff's physical functioning. (Tr. 31). Importantly, ALJ Beatty relied on his own "fresh review" of plaintiff's medical records to find the opinions of Drs. Green and Siddiqui only "mostly persuasive," and he "included additional physical impairments to give the [plaintiff] the full benefit of the doubt." (*Id.*). Because ALJ Beatty did not rely on the state agency doctors' adoption of ALJ Kenyon's prior RFC in crafting plaintiff's RFC for the current time period, the Court finds no error.

Plaintiff further argues that the ALJ failed to reconcile the inconsistencies between the opinions of Drs. Green and Siddiqui and the opinion of plaintiff's treating source, James W. Thomson, D.O. (Doc. 9 at PAGEID 1460-62). On September 11, 2018, Dr. Thomson completed a disability insurance form in which he opined that plaintiff could only sit, stand, walk, reach above shoulder, reach front and side at desk level, perform fine finger movements, and perform eye/hand movements for less than one hour; could never climb, twist, bend, or stoop; could carry up to 10 pounds for less than one hour but never carry more than 10 pounds; and could push/pull 10-20 pounds for less than one hour. (Tr. 311). Dr. Thomson concluded that plaintiff has "[d]eclining health, total incapacitated, not employable." (Tr. 313, Tr. 1158 (same document), Tr. 1164 (same document)). In evaluating the supportability and consistency of Dr. Thomson's medical assessment at the initial and reconsideration stages of review, Drs. Green and Siddiqui opined that Dr. Thomson's opinion was "persuasive" and "consistent with the severity of the

16

current exam findings and the claimant's own statements about his daily activities." (Tr. 87, 96). Nevertheless, both consultants found plaintiff capable of a limited range of light work. Plaintiff argues ALJ Beatty failed to reconcile the medical consultants' findings of an RFC for light work with Dr. Thomson's finding of total incapacity. The Court finds no error in this regard.

First, it is the ALJ's duty to determine the persuasiveness of the medical opinion evidence based on the regulatory consistency and supportability factors. *See* 20 C.F.R. § 404.1520c. ALJ Beatty found Dr. Thomson's opinion "not persuasive" because "he did not report objective findings that would support the extreme limitations," and because "his own treatment notes do not support such excessive limitations." (Tr. 32). In addition, "other treatment notes throughout the record demonstrate significantly better functioning than opined," including the more recent medical records discussed above. (*Id.*). Plaintiff does not take issue with the ALJ's determination in this regard. ALJ Beatty properly considered both the supportability and consistency of Dr. Thomson's opinion as required by 20 C.F.R. § 404.1520c.

Second, Drs. Green and Siddiqui's assessment that Dr. Thomson's opinion was persuasive is not under review. Rather, it is the final decision of the Commissioner – in this case the ALJ's decision – that is the subject of judicial review. ALJ Beatty did not defer to the prior administrative medical findings[7] of the state agency consultants but found them only "mostly persuasive." Thus, the question for the Court is whether ALJ Beatty properly considered and evaluated for persuasiveness the findings and opinions of the state agency doctors and plaintiff's doctor. 20 C.F.R. § 404.1520c. As explained above, the Court finds no error in the ALJ's

---

[7] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review. . . ." 20 C.F.R. § 4041513(a)(5). The ALJ "will not defer or give specific evidentiary weight . . . to any . . . prior administrative medical findings [of the state agency medical consultants]. . . ." 20 C.F.R. § 404.1520c(a).

17

consideration of these opinions and plaintiff has not pointed to any contrary evidence. Accordingly, plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 9) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 4/14/2023

*Karen L. Litkovitz*
Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DENNIS D.,                          Case No. 3:22-cv-202
    Plaintiff,                             Rose, J.
                                         Litkovitz, M.J.
   vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).